**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | : | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MAGDALENA TAVELLA, | : | |
| ANDRES HORACIO FICICCHIA, GONZALO | : | Civil Action No. 13-CIV-4609 |
| GARCIA BLAYA, LUCIA MARIANA | : | |
| HERNANDO, CECILIA DE LORENZO, | : | Judge Naomi Reice Buchwald |
| ADRIANA ROSA BAGATTIN, | : | |
| DANIELA PATRICIA GOLDMAN, | : | |
| MARIANO PABLO FERRARI, | : | |
| MARIANO GRACIARENA, and | : | |
| FERNANDO LOUREYRO, | : | |
| | : | |
| Defendants. | : | |

---

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR ENTRY OF FINAL JUDGMENT BY DEFAULT AGAINST MAGDALENA TAVELLA, ANDRES HORACIO FICICCHIA, GONZALO GARCIA BLAYA, LUCIA MARIANA HERNANDO, CECILIA DE LORENZO, ADRIANA ROSA BAGATTIN, DANIELA PATRICIA GOLDMAN, AND MARIANO PABLO FERRARI**

# **TABLE OF CONTENTS**

Introduction ............................................................................................................................1

Factual Background ..............................................................................................................2

    A.    Selling Defendants Have Failed To Respond To The Commission's Complaint................................................................................................................2

    B.    Uncontested Factual Allegations ...........................................................................4

        1.    Biozoom (f/k/a Entertainment Art) ..............................................................4

        2.    Medford Financial, Ltd. Acquires Entertainment Art ..................................4

        3.    Entertainment Art Is Acquired By Le Mond Capital And Later Changes Its Name to Biozoom ....................................................................5

        4.    Defendants Open U.S. Brokerage Accounts and Deposit Millions of Shares of Biozoom Stock .......................................................................5

        5.    Defendants Sold Millions of Biozoom Shares Without A Valid Registration Statement In Place ...................................................................6

Argument ..............................................................................................................................7

I.    The Court Should Enter Default Judgment Against The Defendants.................................8

II.    The Allegations Of The Complaint Establish That The Defendants Violated Section 5 Of The Securities Act Of 1933 ..........................................................................8

III.    The Court Should Grant The Commission's Requested Relief Against The Defendants ........................................................................................................................11

    A.    The Court Should Permanently Enjoin Defendants From Future Violations Of The Securities Laws .........................................................................11

    B.    The Court Should Order the Selling Defendants to Disgorge Profits of Their Unlawful Biozoom Sales and Pay Prejudgment Interest on Those Amounts .................................................................................................................12

    C.    The Court Should Order Defendants Tavella, Ficicchia, Blaya, Hernando, De Lorenzo, Bagattin, Goldman, and Ferrari To Pay Civil Penalties ......................14

Conclusion ............................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Au Bon Pain v. Artect, Inc.*,
    653 F.2d 61 (2d Cir. 1981)......................................................................................................8, 9

*Bermudez v. Reid*,
    733 F.2d 18 (2d Cir. 1984)...........................................................................................................8

*Chen v. Jenna Lane, Inc.*,
    30 F. Supp. 2d 622 (S.D.N.Y. 1998)..........................................................................................12

*Cotton v. Slone*,
    4 F.3d 176 (2d Cir. 1993) ........................................................................................................8, 9

*Fustok v. ContiCommodity Servs., Inc.*,
    873 F.2d 38 (2d Cir. 1989)..........................................................................................................12

*SEC v. Anticevic*,
    No. 05 CV 6991(KMW), 2009 WL 4250508 (S.D.N.Y. Nov. 30, 2009).....................11, 12

*SEC v. Brandonisio*,
    2013 WL 5375283 (D. Nev. Sept. 24, 2013) ............................................................................14

*SEC v. Cavanagh*,
    1 F. Supp. 2d 337 (S.D.N.Y. 1998), *aff'd*, 155 F.3d 129 (2d Cir. 1998) .............................9

*SEC v. CMKM Diamonds, Inc.*,
    635 F.Supp.2d 1185 (D. Nev. 2009) .........................................................................................14

*SEC v. Elliott*,
    No. 09 Civ. 7594(RJH), 2011 WL 3586454 (S.D.N.Y. Aug. 11, 2011) ...........................13

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996).........................................................................................11, 12, 13

*SEC v. Haligiannis*,
    470 F. Supp. 2d 373 (S.D.N.Y. 2007)........................................................................................14

*SEC v. Interlink Data Network, Inc., et. al.*,
    No. 93–cv–3073, 1993 WL 603274 (C.D. Cal. Nov. 15, 1993).........................................14

*SEC v. Kern*,
    425 F.3d 143 (2d Cir. 2005).........................................................................................................14

*SEC v. Management Dynamics, Inc.*,
   515 F.2d 801 (2d Cir. 1975)...................................................................................................9

*SEC v. Manor Nursing Centers, Inc.*,
   458 F.2d 1082 (2d Cir. 1972)................................................................................................12

*SEC v. McNulty*,
   137 F. 3d 732, 736-37 (2d Cir. 1998) ..................................................................................11

*SEC v. Pentagon Capital Management PLC*,
   2012 WL 1036087 (S.D.N.Y. March 28, 2012) ..................................................................14

*SEC v. Ralston Purina*,
   346 U.S. 119 (1953)................................................................................................................9

*SEC v. Shehyn*,
   No. 04 CV 2003(LAP), 2010 WL 3290977 (S.D.N.Y. Aug. 9, 2010) ................................10

*SEC v. Universal Consulting Resources LLC*,
   2011 WL 6012532 (D. Colo. Dec. 1, 2011).........................................................................14

*SEC v. Universal Major Indus.*,
   546 F.2d 1044 (2d Cir. 1976).................................................................................................9

*Trans World Airlines, Inc. v. Hughes*,
   449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) .........................9

*Zacharias v. SEC*,
   569 F.3d 458 (D.C. Cir. 2009)..............................................................................................14

**STATUTES AND RULES**

Section 5 of the Securities Act of 1933,15 U.S.C. § 77e....................................................... *passim*

Section 20 of the Securities Act of 1933, 15 U.S.C. § 77t.........................................................2, 14

Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l..............................................4

Federal Rule of Civil Procedure 4(f) ...............................................................................................3

Federal Rule of Civil Procedure 55(b)(2) ....................................................................................... 1

Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 501 *et. seq.*......................................7

Local Civil Rule 55.2(b) ..................................................................................................................1

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in Support of Its Application for Entry of Final Judgment by Default Against Defendants Magdalena Tavella, Andres Horacio Ficicchia, Gonzalo Garcia Blaya, Lucia Mariana Hernando, Cecilia De Lorenzo, Adriana Rosa Bagattin, Daniela Patricia Goldman, and Mariano Pablo Ferrari (collectively, the "Selling Defendants") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 55.2(b) of the Local Civil Rules.[1]  Default judgment is appropriate because the Selling Defendants were properly served with the summons and the Complaint in July 2013, yet have failed to answer, plead, or otherwise defend this action. Following the Commission's application, the Clerk of the Court entered defaults against each of the Selling Defendants on May 15, 2014.  *See* Ex. 1, Clerk's Default.

The Commission's Complaint alleges that defendants—Argentine nationals—purchased millions of shares of Biozoom, Inc., a penny stock company traded on the Over-the-Counter Bulletin Board ("OTCBB"), without an effective registration statement in violation of Section 5(c) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77e(c)].  In addition, the Commission alleges that the Selling Defendants sold millions of these shares without an effective registration statement in violation of Section 5(a) of the Securities Act [15 U.S.C. §77e(a)].  Upon selling these shares, the Selling Defendants instructed their brokerage firms to wire the proceeds of their sales to foreign bank accounts in various countries.  For example, Defendants Bagattin, Goldman, Ferrari, and Hernando wired nearly $16 million of proceeds from their Biozoom sales to different banks located outside of the United States, while Defendants Tavella, Blaya and Hernando issued instructions (that were not honored) to wire roughly $8 million outside of the

---

[1]  Defendants Mariano Graciarena and Fernando Loureyro did not sell their BIZM shares and are not subject to the Commission's instant motion.

United States.  (*Id.*)  Approximately $15 million in Biozoom sales proceeds currently remain in the Selling Defendants' domestic brokerage accounts.

It has now been almost one year since the Complaint was filed and served on the Selling Defendants. The Clerk of the Court has entered defaults against each of them. Yet, the Selling Defendants have made no effort to respond or otherwise defend the allegations levied against them by the Commission.  The Commission therefore requests entry of a final judgment by default against each of the Selling Defendants.  In addition, the Commission requests entry of an order permanently restraining and enjoining the Selling Defendants from violating, directly or indirectly, Section 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e], and ordering the Selling Defendants are liable for disgorgement (representing profits gained as a result of the conduct alleged in the Complaint), together with prejudgment interest thereon, and civil penalties pursuant to Section 20(d) of the Securities [15 U.S.C. § 77t(d)] in the amounts specified herein.[2]

## FACTUAL BACKGROUND

### A. Selling Defendants Have Failed To Respond To The Commission's Complaint

On July 3, 2013, the Commission filed its Complaint and its *Ex Parte* Motion for a Temporary Restraining Order, Asset Freeze and Other Emergency Relief and Order To Show Cause Why A Preliminary Injunction Should Not Be Issued against the Defendants (the Commission's "TRO Motion").  (*See* Dkt. #7.)

On July 3, 2013, the Court granted the Commission's TRO Motion.  The Court's July 3 Order provided that the Commission could serve Defendants via e-mail, overnight delivery service, and other means.  (*See* Dkt. #5 at 5.)  Shortly after entry of the Court's Order, on July 3, 2013, the Commission served each defendant a copy of the SEC's complaint, summons, the

---

[2] A proposed form of judgment against the Selling Defendants has been submitted to the Clerk of the Court pursuant to ECF Rule 18.3.

SEC's TRO Motion and supporting documents, and a copy of the Court's Temporary Restraining Order via e-mail and overnight international delivery service.[3]  Thus, service of the complaint and summons was made on all Defendants within the provisions of Federal Rule of Civil Procedure 4(f) and the provisions of the TRO.  (*See* June 3, 2014 Declaration of Ricky Sachar ("Sachar Decl."), filed simultaneously herewith.)

On July 17, 2013, counsel filed appearances on behalf of each of the Defendants.  (*See* Dkt. # 14, 17.)  That same day, the parties filed a stipulation and proposed order granting the Commission's motion for a preliminary injunction, asset freeze and other relief.  (*See* Dkt. #16.)  The Court entered the parties stipulated order on July 17, 2013.  (*Id*.)  The Court's July 17 Order also provided that service "may be made personally, by facsimile, by overnight courier, or by electronic mail upon each Defendant, his or her attorney, his or her U.S. agents or his or her foreign agents to the extent permitted by law."  (*Id*. at 6.)

On September 16, 2013, Defendants' counsel filed a motion for leave to withdraw as attorneys for the Defendants.  (*See* Dkt. #20.)  That motion was granted on September 24, 2013.  (*See* Dkt. #23.)

On December 18, 2013, the Court entered an order directing the Defendants to answer or otherwise respond to the Commission's Complaint no later than February 3, 2014.  (*See* Dkt. # 26.)  This deadline to answer was subsequently extended as to at least one of the Selling Defendants to March 3, 2014, but none of the Selling Defendants have filed any answer to date.

At the Commission's request, the Clerk of this Court has entered Certificates Noting Default as to each of the Selling Defendants.

---

[3] A copy of the Commission's Complaint is attached as Exhibit 2 and a copy of the summonses to the Selling Defendants are attached as Exhibit 3.  Proof of service upon the Selling Defendants is attached as Exhibit 4.

### B.      Uncontested Factual Allegations[4]

#### 1.      Biozoom (f/k/a Entertainment Art)

Biozoom (f/k/a Entertainment Arts, Inc.) is a Nevada corporation with its principal place of business in Kassel, Germany.  Biozoom's common stock is registered with the Commission pursuant to Section 12 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78l] and is quoted on the OTCBB under the trading symbol "BIZM."  (*See* Compl. ¶ 12.) Beginning in late 2007, Entertainment Art sold stock to 34 individual investors in private placements.  (*Id*. at ¶¶ 27-28.)  On July 18, 2008, Entertainment Art filed a Form S-1 registration statement to register the resale transactions for the 34 shareholders who acquired Entertainment Art stock in these private placements. (*Id*. at ¶ 29.)  In particular, the S-1 registration statement covered 610,000, or approximately one-third of the company's 1.81 million outstanding shares. (*Id*.)  The remaining 1.2 million shares were held by three officers of the company.  (*Id*. at ¶¶ 29-30.)

#### 2.      Medford Financial, Ltd. Acquires Entertainment Art

In May 2009, Entertainment Art was purchased by Medford Financial, Ltd. ("Medford"), a Belizean entity.  (*Id*. at ¶ 31.)   All of the Entertainment Art shares then outstanding were acquired by Medford, including the 610,000 shares sold in private placement transactions to individuals.  (*Id.*¶¶ 31-32.)  Accordingly, all shareholders relinquished their right to shares in Entertainment Art at that time.  (*Id*.)  On June 30, 2009, after the sale was consummated, Entertainment Art approved a 33:1 forward stock split that became effective in July and increased the number of outstanding shares to 59,730,000.  (*Id*. ¶ 34.)

---

[4] In light of the Selling Defendants' default, the factual allegations in the Commission's complaint are taken as true. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993) (complaint's factual allegations are taken as true in light of default judgment in the absence of finding by the court).

### 3. Entertainment Art is Acquired by Le Mond Capital And Later Changes Its Name to Biozoom

In October 2012, Entertainment Art was acquired by Le Mond Capital, a company controlled by Sarah Deutsch. (*Id.* at ¶¶ 35-38.) In a Form 8-K filed on October 25, 2012, the company reported that 39.6 million shares – approximately two-thirds of the outstanding shares – were purchased by Le Mond in a private transaction. (*Id.* at ¶ 9.) However, the stock certificates originally issued to the Entertainment Art private placement investors — shares that were relinquished by investors in connection with the sale of Entertainment Art to Medford in May 2009 — were also provided to counsel for Sarah Deutsch. (*Id.* at ¶ 37.)

On March 12, 2013, Entertainment Art announced a transaction pursuant to which its newly formed subsidiary, Biozoom Technologies, Inc., acquired certain patents, licenses, and related assets from each of three separate companies in exchange for cash of $50,000 and the issuance of 39 million shares of Entertainment Art common stock. (*Id.* at ¶ 40.) Entertainment Art described that, through Biozoom, it was no longer in the business of designing fashionable zip bags but was now in the business of researching, developing, and licensing technologies relating to the mobile remote collection of biomedical data. (*Id.* at ¶ 41.) On April 1, 2013, Entertainment Art changed its name to Biozoom. (*Id.* at ¶ 45.)

### 4. Defendants Open U.S. Brokerage Accounts and Deposit Millions of Shares of Biozoom Stock

From January 2013 through March 2013, shortly before Entertainment Art changed its name to Biozoom and announced a dramatic change in its business, brokerage accounts were opened at Legend Securities, Inc., a registered broker-dealer, by defendants De Lorenzo, Blaya, Hernando, and Ficicchia. (*Id.* at ¶ 46.) In May 2013, brokerage accounts were opened at Scottsdale Capital Advisors, a registered broker-dealer, by defendants Bagattin, Ferrari,

Goldman, Tavella, Loureyro and Graciarena. (*Id*. at ¶ 47.) Each of the Defendants is a resident of Buenos Aires, Argentina and, with one exception, none of the Defendants worked in fields related to securities. (*Id*. ¶¶ 14-23, 45.)

Prior to the business name change from Entertainment Art to Biozoom, defendants Tavella, Ficicchia, Blaya, Hernando, De Lorenzo, Bagattin, Goldman, and Ferrari deposited millions of shares of Entertainment Art into their newly opened brokerage accounts. (*Id*. at ¶¶ 57-101.) Four days after opening brokerage accounts at Scottsdale Capital Advisors, defendants Loureyro and Graciarena deposited 2.3 million and 2.145 million Biozoom shares, respectively, into their brokerage accounts. (*Id*. at ¶¶ 102-104.) All told, the ten brokerage accounts opened in the name of the Defendants received a total of 20,130,000 shares of Entertainment Art. (*Id*. at ¶ 105.) These shares represented ***100% percent*** of the total shares without a restrictive legend outstanding in Biozoom at the time, and approximately 33% percent of the total outstanding shares of Biozoom. (*Id*.)

### 5. Defendants Sold Millions of Biozoom Shares Without A Valid Registration Statement In Place

Absent an applicable exemption, Section 5 of the Securities Act makes it unlawful for any person, directly or indirectly, to offer or sell securities, using the U.S. mails or interstate commerce, unless such offer or sale is registered with the Commission. *See* 15 U.S.C. §77e(a) and (c). There was no registration statement in effect for the sale transactions by the Selling Defendants, nor were the sales exempt from registration. (Compl. at ¶¶ 111-12.)

However, shortly after defendants Tavella, Ficicchia, Blaya, Hernando, De Lorenzo, Bagattin, Goldman, and Ferrari deposited Biozoom shares in their newly opened brokerage accounts, the Selling Defendants sold millions of shares in Biozoom for large profits. In total, defendants Tavella, Ficicchia, Blaya, Hernando, De Lorenzo, Bagattin, Goldman, and Ferrari

sold 14,078,406 Biozoom shares for proceeds of almost $34 million.[5] (*Id*. at ¶ 107.) All of these defendants placed their orders to sell Biozoom stock in the same manner – via e-mail and instant message to either Legend or Scottsdale. (*Id*. ¶ 108.) And upon selling shares in Biozoom, several of the defendants instructed their brokerage firms to wire the proceeds of their sales to foreign bank accounts in various countries. (*Id*. at 109.) Defendants Bagattin, Goldman, Ferrari, and Hernando wired nearly $16 million of proceeds from their Biozoom sales to different banks located outside of the United States. (*Id*.) In addition, Tavella, Blaya and Hernando issued instructions to wire roughly $8 million outside of the United States, but the brokerage firms did not execute these wires. (*Id*.) Approximately $15 million in Biozoom sales proceeds currently remain in the Defendants' brokerage accounts. (*Id*. at ¶ 98)

## ARGUMENT

Where a defendant has failed to respond to a plaintiff's complaint, the Court may enter judgment by default unless the defaulting defendant is an infant, incompetent or in active military service. *See* Fed. R. Civ. P. 55 (b)(2); Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 520. None of these exceptions apply here. Selling Defendants are adults and as citizens and residents of Argentina, they cannot be in military service as that term defined in the Soldiers and Sailors Relief Act. *See* 50 U.S.C. § 511(1); Sachar Decl. ¶ 13.

As the Selling Defendants have been properly served and are not infants, incompetent or in military service, the Commission respectfully requests that the Court enter default judgments against each of the Selling Defendants.

---

[5]   To date, Graciarena and Loureyro, who had deposited into their Scottsdale accounts 2,145,000 and 2,300,000 shares, respectively, did not sell any their Biozoom shares.

**I.      THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST THE DEFENDANTS**

As a preliminary matter to entry of default judgment, the Court should be assured that proper notice of the Complaint was provided to the Selling Defendants.  Here, service to Defendants of the Complaint and a Summons was completed on July 3, 2013 by alternative service, in the manner approved by the Court.  *See* Sachar Decl. ¶ 6.  In addition, there is direct evidence that Defendants have actual notice of this action:  the Defendants retained U.S.-based counsel who entered an appearance on their behalf.  (*See* Dkt. # 14, 17.)  Further, Selling Defendants' counsel negotiated and stipulated to entry of an order for a preliminary injunction.  (*See* Dkt. # 16).

Despite proper service and actual notice of this action, Selling Defendants have failed to plead, respond or otherwise defend themselves in this case. As here, where a party wholly "fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party. . . ." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984) (*citing* Fed. Rule Civ. P. 55 (b)(2).)  Now that the Clerk of the Court has entered a certificate of default against the Selling Defendants, a judgment by default is appropriate.  *Id*.

**II.     THE ALLEGATIONS OF THE COMPLAINT ESTABLISH THAT THE DEFENDANTS VIOLATED SECTION 5 OF THE SECURITIES ACT OF 1933.**

The Selling Defendants' default amounts to a concession of the truth of each of the factual allegations in the Complaint as to their liability. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993) (complaint's factual allegations are taken as true in light of default judgment in the absence of finding by the court).  What remains for decision, once the Court takes "as true all of the factual allegations," is only a determination of the appropriate remedy.  *Au Bon Pain v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981).

Here, the allegations in the Complaint, deemed true upon default, *see Cotton*, 4 F.3d at 181; *Au Bon Pain*, 653 F.2d at 65, establish that the Selling Defendants violated the federal securities laws when they purchased and sold Biozoom shares without an effective registration statement. *See SEC v. Management Dynamics, Inc*., 515 F.2d 801, 814 (2d Cir. 1975) ("To be sure, 'a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability.'") (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).

Section 5(a) of the Securities Act prohibits the sale of securities in interstate commerce unless pursuant to an effective registration statement. *See* 15 U.S.C. § 77e. In addition, Section 5(c) of the Securities Act makes it unlawful to offer to sell securities, through the use or medium of a prospectus or otherwise, unless a registration statement has been filed as to such security or pursuant to an exemption. *Id*. at § 77e(c). A *prima facie* Section 5 violation requires proof of three elements: *first*, that no registration statement was filed or in effect as to the securities; *second*, that the defendant sold or offered to sell these securities; and *third*, that there was a use of interstate means in connection with the offer or sale. *See SEC v. Cavanagh*, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998), *aff'd*, 155 F.3d 129 (2d Cir. 1998). Once the Commission establishes a *prima facie* violation, the defendants bear the burden of proving that an exemption applies. *See SEC v. Ralston Purina*, 346 U.S. 119, 126 (1953).[6]

---

[6] A Section 5 violation does not require a showing of scienter. *See SEC v. Universal Major Indus.*, 546 F.2d 1044, 1047 (2d Cir. 1976).

Here, the Commission has established a *prima facie* case that Selling Defendants have violated Section 5 of the Securities Act. *First*, no registration statement was filed or in effect permitting Selling Defendants to offer or sell their Biozoom shares.[7] (Compl. ¶¶ 111-12.)

*Second*, the Selling Defendants have sold over 14 million shares of Biozoom stock (reaping nearly $34 million in proceeds) without an effective registration statement in effect. (*Id*. at ¶ 94.) Thus, an offer or sale of these securities in public markets would violate Section 5.

*Third*, trading and sale instructions were communicated to Selling Defendants' brokers using instant messages and e-mails. (*Id*. at ¶ 96.) Thus, the Selling Defendants have used means of interstate commerce in connection with their securities sales. *See*, *e.g*., *SEC v. Shehyn*, No. 04 CV 2003(LAP), 2010 WL 3290977, at *4 (S.D.N.Y. Aug. 9, 2010) (observing "[i]nstrumentalities of interstate commerce include telephone and email communications" for purposes of securities law violations).

Thus, the Commission has established that the Selling Defendants have violated (or will violate) Section 5 of the Securities Act.

---

[7] In opening their brokerage accounts, each defendant submitted information purporting to show that they could legally sell their securities. The Defendants indicated that they purchased all or a portion of their shares in private sales from the original Entertainment Art (a predecessor company of Biozoom) investors whose resale transactions for the shares had been registered pursuant to the Form S-1 registration filed by the company in July 2008. (Compl. ¶ 98.) Defendants submitted documentation indicating that they acquired their shares from these investors in private transactions from November 2012 to March 2013, and provided copies of stock purchase agreements that each defendant purportedly entered into with the seller of the shares. (*Id*. at ¶¶ 33, 39, 45, 52, 58, 65, 72, 79, 84, 86.) Although claiming to have acquired all or a portion of their shares from the original private placement investors in Entertainment Art (the predecessor of Biozoom), those private placement investors had in fact sold and relinquished all their shares in the May 2009 sale of Entertainment Art to Medford — *three to four years before* the Defendants claimed to have purchased their shares from the private placement investors. (Declaration of David Lubin ("Lubin Decl.") [Dkt. #8-2] 3-4.)

### III. THE COURT SHOULD GRANT THE COMMISSION'S REQUESTED RELIEF AGAINST THE DEFENDANTS.

#### A. The Court Should Permanently Enjoin the Selling Defendants From Future Violations of the Securities Laws.

In entering judgment against the Selling Defendants, the Court should also permanently enjoin Defendants from future violations of the federal securities laws. Even in cases of default, the Court has authority to fashion an appropriate remedy provided a sufficient factual basis exists. *See SEC v. McNulty*, 137 F. 3d 732, 736-37, 741 (2d Cir. 1998) (in cases of default, district court has discretion to enter injunction if such relief is warranted); *SEC v. Anticevic*, No. 05 CV 6991(KMW), 2009 WL 4250508, at *6 (S.D.N.Y. Nov. 30, 2009) (permanent injunction, disgorgement with prejudgment interest, and civil penalties ordered against defaulting party). The facts more than support the entry of a permanent injunction.

The Selling Defendants falsely claimed to have purchased all or a portion of their Biozoom shares in private sales from the original Entertainment Art (a predecessor company of Biozoom) investors whose resale transactions for the shares had been registered pursuant to the Form S-1 registration filed by the company in July 2008 and provided their brokerages with copies of phony stock purchase agreements to facilitate Selling Defendants' eventual resale of the shares. (Compl. at ¶¶ 33, 39, 45, 52, 58, 65, 72, 79, 84, 86, 98; Lubin Decl. Dkt. #8-2) The Selling Defendants sold millions of Biozoom without a valid registration statement. These sales took place over a five month period. Simply put, the Selling Defendants' conduct was not isolated, but was systematic and was made possible by the Selling Defendants' use of false paperwork. Because the Defendants' conduct was systematic and deceitful, injunctive relief is appropriate. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996) ("Such an injunction is particularly within the court's discretion where a violation was 'founded on systematic wrongdoing, rather than an isolated occurrence,' . . . and where the court views the defendant's

11

degree of culpability and continued protestations of innocence as indications that injunctive relief is warranted. . . ." (citations omitted)).

   **B.**  **The Court Should Order the Selling Defendants to Disgorge Profits of Their Unlawful Biozoom Sales and Pay Prejudgment Interest on Those Amounts.**

  It is well-settled that the Commission may seek, and the courts may order, disgorgement of all illegal proceeds from violations of the federal securities laws. *S e e SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972) ("The deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits."). In cases of default, the Court must take "factual allegations of the Complaint . . . as true," based upon which, the Court may fashion the appropriate disgorgement remedy. *Chen v. Jenna Lane, Inc*., 30 F. Supp. 2d 622, 624 (S.D.N.Y. 1998) (in cases of default, allegations of amount of damages are taken as true unless evidence presented to the contrary). Not only does the district court have broad discretion to order disgorgement, but it has the same broad discretion in calculating the amount. *See First Jersey*, 101 F.3d at 1475.

  The Commission is not required to establish with absolute certainty the amount to be disgorged, but rather to establish that a "reasonable approximation of profits are casually connected to the violation." *Chen,* 30 F. Supp. 2d at 624; *see also First Jersey*, 101 F.3d at 1475 (any uncertainty in the calculation of disgorgement falls on the wrongdoer). Where, as here, the record is sufficient to establish the disgorgement amount, the Court may award disgorgement without an evidentiary hearing. *See Fustok v. ContiCommodity Servs., Inc*., 873 F.2d 38, 39-40 (2d Cir. 1989) (affidavits, documentary evidence, and the court's knowledge formed sufficient basis for damages in awarding default judgment); *Anticevic*, 2009 WL 4250508, at *6 (awarding disgorgement on default).

The Court also has the discretion to order prejudgment interest on the disgorgement amounts. *First Jersey*, 101 F.3d at 1476 ("The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion."). Prejudgment interest, like disgorgement, "is meant to deprive wrongdoers of the fruits of their ill-gotten gains from violating securities laws." *SEC v. Elliott*, No. 09 Civ. 7594(RJH), 2011 WL 3586454, at *11-12 (S.D.N.Y. Aug. 11, 2011). Typically, the Commission employs the same rate that is generally imposed by the IRS, and courts have approved the use of the IRS rate in connection with disgorgement, which is appropriate here. *See id.* at *12; *see also First Jersey,* 101 F.3d at 1476.

Through the Complaint and the attached affidavit, the Commission has demonstrated that a reasonable approximation of the illegal profits (representing the net proceeds from the sales of Biozoom stock between May 16, 2013 and June 24, 2013 obtained by each Selling Defendants is as follows:

| **Defendant** | **Disgorgement Amount** | **Prejudgment interest** |
|---|---|---|
| Magdalena Tavella | $3,107,819 | $86,451.70 |
| Andres Horacio Ficicchia | $2,037,616 | $56,681.34 |
| Gonzalo Garcia Blaya | $3,063,501 | $85,218.88 |
| Lucia Mariana Hernando | $5,263,585 | $146,419.68 |
| Cecilia De Lorenzo | $5,012,250 | $139,428.16 |
| Adriana Rosa Bagattin | $6,216,380 | $172,924.02 |
| Daniela Patricia Goldman | $3,764,306 | $104,713.51 |
| Mariano Pablo Ferrari | $5,447,450 | $151,534.33 |

*See* Sachar Decl. ¶¶ 17, 20, 23, 26, 29, 32, 35, 38, 39-46.

### C.   The Court Should Order Defendants Tavella, Ficicchia, Blaya, Hernando, De Lorenzo, Bagattin, Goldman, and Ferrari To Pay Civil Penalties.

Civil penalties against the Selling Defendants are appropriate.  Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), authorizes the Commission to seek, and the Court to impose, civil monetary penalties for violation of Section 5 of the Securities Act.  *See*, *e.g.*, *Zacharias v. SEC*, 569 F.3d 458, 470-71 (D.C. Cir. 2009); *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005).  Section 20(d) permits the Commission to seek penalties equal to a fixed sum per violation or "the gross amount of pecuniary gain" to a defendant.  15 U.S.C. §77t(d).  "Civil penalties are designed to punish the individual violation and deter future violations of the securities laws." *SEC v. Pentagon Capital Management PLC*, 2012 WL 1036087, at *2 (S.D.N.Y. March 28, 2012) (*citing SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007)).

Here, the Commission seeks to impose a penalty against each of the Selling Defendants equal to his or her gross pecuniary gain from the sale of Biozoom shares, *i.e.*, the disgorgement amount for each Selling Defendant.  Courts have routinely imposed civil penalties equal to the gross amount of a defendant's gross pecuniary gain.  *See*, *e.g.*, *SEC v. Universal Consulting Resources LLC*, 2011 WL 6012532, at *3 (D. Colo. Dec. 1, 2011) (granting default judgment and ordering civil penalty in Section 5 case equal to amount of defendant's gross pecuniary gains); *SEC v. Brandonisio*, 2013 WL 5375283, at *2 (D. Nev. Sept. 24, 2013) (imposing civil penalty for Section 5 violation equal to amount of disgorgement); *SEC v. CMKM Diamonds, Inc.*, 635 F.Supp.2d 1185, 1193-94 (D. Nev. 2009) (imposing a single penalty equal to the amount of disgorgement); *SEC v. Interlink Data Network, Inc.*, et. al., No. 93–cv–3073, 1993 WL 603274, at *13 (C.D. Cal. Nov. 15, 1993) (ordering a $12,285,035 penalty equal to the disgorgement amount).  A penalty is appropriate given the massive selling of shares in an

unregistered distribution of securities – an unregistered distribution of which purchasers and sellers of BIZM stock were unaware when they made their investment decisions.

## **CONCLUSION**

Having failed to answer the Complaint, the Selling Defendants are subject to a default judgment. The default was the result of their own culpable conduct, the Commission would be prejudiced by any other result, and the Selling Defendants do not have a meritorious defense. The circumstances warrant the relief sought by the Commission, including an injunction, disgorgement of illegal gains, with prejudgment interest, and civil penalties. The Commission respectfully requests that the Court enter judgment against the Selling Defendants and order the equitable relief sought.

Dated: June 4, 2014

        Respectfully submitted,

        /s/ Patrick M. Bryan
        Patrick M. Bryan (admitted *pro hac vice*)
        U.S. Securities & Exchange Commission
        100 F Street, NE Washington, DC 20549
        Telephone: (202) 551-4420
        GottesmanD@sec.gov
        BryanP@sec.gov

*Of counsel:*

Antonia Chion
Ricky Sachar
U.S. Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549