**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : |
| Plaintiff, | : : |
| v. | : : **DECLARATION OF RICKY SACHAR** |
| MAGDALENA TAVELLA, ANDRES HORACIO FICICCHIA, GONZALO GARCIA BLAYA, LUCIA MARIANA HERNANDO, CECILIA DE LORENZO, ADRIANA ROSA BAGATTIN, DANIELA PATRICIA GOLDMAN, MARIANO PABLO FERRARI, MARIANO GRACIARENA, and FERNANDO LOUREYRO, | : : CIVIL ACTION NO. 13-CIV-4609 : : JUDGE NAOMI R. BUCHWALD : : : : : : : |
| Defendants. | : : : |

**DECLARATION OF RICKY SACHAR**

I, Ricky Sachar, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am a member of the bars of the District of Columbia and Maryland and am an Assistant Director for the United States Securities and Exchange Commission ("Commission"), plaintiff in the above-entitled action. I am familiar with all the facts and circumstances in this action.

2. I submit this Declaration in support of the Commission's Motion (the "Motion") for Default Judgment Against Defendants Magdalena Tavella, Andres Horacio Ficicchia, Gonzalo Garcia Blaya, Lucia Mariana Hernando, Cecilia De Lorenzo, Adriana Rosa Bagattin, Daniela Patricia Goldman, and Mariano Pablo Ferrari.

3.     I make this Declaration based upon personal knowledge, information and belief. The sources of my information and the bases of my belief are documents obtained by the Commission staff (the "Staff") and information provided to me by other members of the Staff. Because the Commission submits this Declaration for the limited purpose of supporting the Application, I have not set forth each and every fact that I know about this matter.

**A.     Procedural History of the Action**

4.     This action was commenced on July 3, 2013, with the filing of the summons and complaint.   (Dkt. # 1.)   Separate copies of the summons and complaint were served on Defendants, on July 3, 2013, in accordance with the Court's Temporary Restraining Order entered July 3, 2013 ("TRO").   The Order provided for alternative service of the complaint, summons and all subsequent motions and pleadings as to Defendants who reside in Argentina. Attached as Exhibit 1 is a true and correct copy of the complaint filed by the Commission against the Defendants on July 3, 2013.

5.     The SEC alleged that, between May 16, 2013 and June 19, 2013, Defendants Blaya, DeLorenzo, Hernando, Ficicchia, Tavella, Bagattin, Ferrari, and Goldman (collectively, "Selling Defendants") sold approximately 14 million shares of Biozoom, Inc. ("Biozoom") stock, yielding gross proceeds of nearly $34 million.   Because there was no registration statement in effect for Defendants' Biozoom stock sales, all of the transactions violated § 5 of the Securities Act of 1933.

6.     In accordance with the TRO, service was made by serving each Defendant via electronic mail ("e-mail") and by overnight international delivery service, on July 3, 2013.   Proof of service thereof was filed on May 15, 2014. (*See* Dkt. # 41.)

7.   On July 17, 2013, counsel filed notices of appearance on behalf of each of the Defendants. (*See* Dkt. # 14, 17.) That same day, the parties filed a stipulation and proposed order granting the Commission's motion for a preliminary injunction, asset freeze and other relief. (*See* Dkt. #16.) The Court entered the parties stipulated order on July 17, 2013. (*Id.*) The Court's July 17 Order also provided that service "may be made personally, by facsimile, by overnight courier, or by electronic mail upon each Defendant, his or her attorney, his or her U.S. agents or his or her foreign agents to the extent permitted by law." (*Id.* at 6.)

8.   On September 16, 2013, Defendants' counsel filed a motion for leave to withdraw as attorneys for the Defendants. (*See* Dkt. #20.) That motion was granted on September 24, 2013. (*See* Dkt. #23.)

9.   On December 18, 2013, the Court entered an order directing the Defendants to answer or otherwise respond to the Commission's Complaint by February 3, 2014. (*See* Dkt. # 26.)

10.   On February 3, 2014 – Selling Defendants' deadline to answer or otherwise respond to the Commission's Complaint – new counsel (Brafman & Associates, P.C.) entered an appearance on behalf of Defendant Magdalena Tavella, and simultaneously sought a 30-day extension for Defendant Tavella to answer or otherwise respond to the Commission's Complaint. (*See* Dkt. # 27, 28.) The Court granted the extension on February 6, 2014, *see* Dkt. # 29, and set a new deadline for Defendant Tavella to answer the Commission's complaint as March 5, 2014.

11.   On March 14, 2014, Brafman & Associates, P.C. sought permission to withdraw as counsel for Defendant Tavella. (*See* Dkt. # 31). The Court granted permission on March 26, 2014. (*See* Dkt. # 32)

12.     Docket entries indicate that the Selling Defendants have failed to file an answer or otherwise moved with respect to the complaint herein.  Accordingly, a Default Judgment against each of the Selling Defendants is warranted.  In fact, on May 15, 2014, the Clerk of the Court entered a certificate of default against the Defendants (Dkt. # 42).  Attached as Exhibit 2 is the true and correct Certificate of Default issued by the Clerk on May 15, 2014.

13.     The Selling Defendants are adults and, as citizens and residents of Argentina, they cannot be in military service as that term defined in the Soldiers and Sailors Relief Act.  *See* 50 U.S.C. § 511(1).  Therefore, upon information and belief, none of the Defendants is a minor, an incompetent person, or a member of the United States military.

14.     Accordingly, we submit a proposed Final Judgment against each of the eight Defendants that are the subject of this Default Judgment Application.  Attached as Exhibit 3 is a true and correct copy of a Proposed Final Judgment against the eight Defendants.

**B.     Facts Supporting Disgorgement Award**

Defendant Andres Horacio Ficicchia

15.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1), Andres Horacio Ficicchia, opened a brokerage account at Legend Securities, Inc. ("Legend"), a New York based broker-dealer, and deposited 1,402,500 shares of Entertainment Art, Inc. into his account.  Ficicchia purportedly paid $31,050.00 for these shares.  See Exhibit 4.

16.     On April 1, 2013, Entertainment Art changed its name to Biozoom, Inc. ("Biozoom").  Biozoom, Inc. ("Biozoom") is a Nevada corporation.  Biozoom's common stock is registered with the Commission pursuant to Section 12 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78l] and is quoted on the OTCBB under the trading symbol

"BIZM." Thus, as of April 1, 2013, Ficicchia held 1,402,500 BIZM shares in his brokerage account.

17.    From May 20, 2013 to June 5, 2013, Ficicchia sold all of his BIZM shares for proceeds of $2,068,666, yielding a total gain of $2,037,616 after subtracting the amount Ficicchia purportedly paid for the shares. As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 5 for a true and correct copy of brokerage account statements that reflect Ficicchia's Biozoom sales.

Defendant Gonzalo Garcia Blaya

18.    As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion, Gonzalo Garcia Blaya (Dkt. #8-1), opened a brokerage account at Legend and deposited 1,485,000 shares of Entertainment Art, Inc. into his account. Blaya purportedly paid $6,750 for these shares. See Exhibit 6.

19.    These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, Blaya held 1.485 million BIZM shares in his Legend brokerage account.

20.    From May 16, 2013 to June 13, 2013, Blaya sold 1,312,052 BIZM shares for proceeds of $3,070,251, yielding a total gain of $3,063,501 after subtracting the amount Blaya purportedly paid for the shares. As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 7 for a true and correct copy of brokerage account statements that reflect Blaya's Biozoom sales.

Defendant Cecilia De Lorenzo

21.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1), Cecilia De Lorenzo, opened a brokerage account at Legend and deposited 2,062,500 shares of Entertainment Art, Inc. into her account. De Lorenzo purportedly paid $8,300 for these shares. See Exhibit 8.

22.     These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, De Lorenzo held 2,062,500 BIZM shares in her Legend brokerage account.

23.     From June 17, 2013 to June 18, 2013, De Lorenzo sold 1,328,000 BIZM shares for proceeds of $5,020,550, yielding a total gain of $5,012,250 after subtracting the amount De Lorenzo purportedly paid for the shares.  As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 9 for a true and correct copy of a brokerage account statement that reflects De Lorenzo's Biozoom sales.

Defendant Lucia Mariana Hernando

24.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1), Lucia Mariana Hernando opened a brokerage account at Legend and deposited 1,815,000 shares of Entertainment Art, Inc. into her account.  Hernando purportedly paid $5,445.00 for these shares. See Exhibit 10.

25.     These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, Hernando held 1.815 million BIZM shares in her Legend brokerage account.

26.     From June 6, 2013 to June 17, 2013, Hernando sold all 1.815 million BIZM shares for proceeds of $5,269,030, yielding a total gain of $5,263,585 after subtracting the

amount Hernando purportedly paid for the shares. As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 11 for a true and correct copy of a brokerage account statement that reflects De Lorenzo's Biozoom sales.

Defendant Daniela Patricia Goldman

27.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1), Daniela Patricia Goldman opened a brokerage account at Scottsdale Capital Advisors, Inc. ("Scottsdale"), an Arizona based broker-dealer and deposited 2,485,000 shares of Entertainment Art, Inc. into her account. Goldman purportedly paid $7,455 for these shares. See Exhibit 12.

28.     These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, Goldman held 2.485 million BIZM shares in her Scottsdale brokerage account.

29.     From May 28, 2013 to June 6, 2013, Goldman sold 2,457,645 BIZM shares for proceeds of $3,771,761, yielding a total gain of $3,764,306 after subtracting the amount Goldman purportedly paid for the shares. As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 13 for a true and correct copy of a trade blotter that reflects Goldman's Biozoom sales.

Defendant Adriana Rosa Bagattin

30.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1), Adriana Rosa Bagattin opened a brokerage

account at Scottsdale and deposited 2,310,000 shares of Entertainment Art, Inc. into her account. Bagattin purportedly paid $6,930 for these shares. See Exhibit 14.

31.     These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, Bagattin held 2.310 million BIZM shares in her Scottsdale brokerage account.

32.     From June 10, 2013 to June 18, 2013, Bagattin sold 2,176,726 BIZM shares for proceeds of $6,223,310, yielding a total gain of $6,216,380 after subtracting the amount Bagattin purportedly paid for the shares. As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 15 for a true and correct copy of a trade blotter that reflects Bagattin's Biozoom sales.

Defendant Mariano Pablo Ferrari

33.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1), Mariano Pablo Ferrari opened a brokerage account at Scottsdale and deposited 2,310,000 shares of Entertainment Art, Inc. into his account. Ferrari purportedly paid $9,240 for these shares. See Exhibit 16.

34.     These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, Ferrari held 2.31 million BIZM shares in his Scottsdale brokerage account.

35.     From June 7, 2013 to June 19, 2013, Ferrari sold 1,994,038 BIZM shares for proceeds of $5,456,690, yielding a total gain of $5,447,450 after subtracting the amount Ferrari purportedly paid for the shares. As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 17 for a true and correct copy of a trade blotter that reflects Ferrari's Biozoom sales.

Defendant Magdalena Tavella

36.     As reflected in greater detail in the July 3, 2013 Declaration of Ricky Sachar filed as part of the Commission's TRO motion (Dkt. #8-1),  Magdalena Tavella opened a brokerage account at Scottsdale and deposited 1,815,000 shares of Entertainment Art, Inc. into her account. Tavella purportedly paid $9,075 for these shares. See Exhibit 18.

37.     These shares became BIZM shares as a result of the April 1, 2013 name change. Thus, Tavella held 1.815 million BIZM shares in her Scottsdale brokerage account.

38.     From June 7, 2013 to June 1  1, 2013, Tavella sold 1,592,444 BIZM shares for proceeds of $3,116,894, yielding a total gain of $3,107,819 after subtracting the amount Tavella purportedly paid for the shares.  As reflected in greater detail in our Memorandum of Law In Support of Our Application for a Default Judgment, these sales were not made pursuant to any registration statement and therefore, violated Section 5 of the Securities Act. See Exhibit 19 for a true and correct copy of a trade blotter that reflects Tavella's Biozoom sales.

**C.     Prejudgment Interest Calculations**

39.     Attached as Exhibit 20 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $56,681.34 in interest on the $2,037,616 Ficicchia unlawfully obtained by selling BIZM shares without a registration statement in effect.

40.     Attached as Exhibit 21 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $85,218.88 in interest on the $3,063,501 Blaya unlawfully obtained by selling BIZM shares without a registration statement in effect.

41.     Attached as Exhibit 22 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $139,428.16 in interest on the $5,012,250 De Lorenzo unlawfully obtained by selling BIZM shares without a registration statement in effect.

42.     Attached as Exhibit 23 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $146,419.68 in interest on the $5,263,585 Hernando unlawfully obtained by selling BIZM shares without a registration statement in effect.

43.     Attached as Exhibit 24 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $104,713.51 in interest on the $3,764,306 Goldman unlawfully obtained by selling BIZM shares without a registration statement in effect.

44.     Attached as Exhibit 25 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $172,924.02 in interest on the $6,216,380 Bagattin unlawfully obtained by selling BIZM shares without a registration statement in effect.

45.     Attached as Exhibit 26 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $151,534.33 in interest on the $5,447,450 Ferrari unlawfully obtained by selling BIZM shares without a registration statement in effect.

46.     Attached as Exhibit 27 is a true and correct copy of a prejudgment interest report prepared by the Staff reflecting the basis for the Staff's calculation of $86,451.70 in interest on

the $3,107,819 Tavella unlawfully obtained by selling BIZM shares without a registration statement in effect.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on June ____, 2014
Washington, DC

_____
Ricky Sachar
Assistant Director, Division of Enforcement
U.S. Securities and Exchange Commission